# Illinois Official Reports

## Appellate Court

---

**Employees' Retirement System of the State of Hawaii ex rel. Jackson v. Clarion Partners, LLC, 2017 IL App (1st) 161480**

---

| | |
|---|---|
| Appellate Court Caption | THE EMPLOYEES' RETIREMENT SYSTEM OF THE STATE OF HAWAII AND THE STATE OF HAWAII *ex rel.* STEPHEN JACKSON, Plaintiff-Appellant and Cross-Appellee, v. CLARION PARTNERS, LLC, and ING CLARION REALTY SERVICES, LLC, Defendants-Appellees and Cross-Appellants. |
| District & No. | First District, Sixth Division<br>Docket No. 1-16-1480 |
| Filed<br>Rehearing denied | March 24, 2017<br>April 18, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 12-L-11919; the Hon. Sanjay T. Tailor, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Stephen Jackson, of Chicago, appellant *pro se*.<br><br>A&G Law LLC, of Chicago (Robert Andalman and Rachael Blackburn, of counsel), for appellees. |
| Panel | JUSTICE DELORT delivered the judgment of the court, with opinion.<br>Presiding Justice Hoffman and Justice Cunningham concurred in the judgment and opinion. |

**OPINION**

¶ 1    Plaintiff Stephen Jackson filed this *qui tam* lawsuit under Hawaii's false claims statute (Haw. Rev. Stat. § 661-21 *et seq.* (2014) (Hawaii False Claims Act)), against defendants Clarion Partners, LLC, and ING Clarion Realty Services, LLC. The circuit court granted summary judgment to the Clarion defendants. Jackson appeals that decision. The Clarion defendants have filed a cross-appeal claiming that the court erred by denying their request for certain costs, which they contend were recoverable under Hawaii law. We affirm.

¶ 2                                   BACKGROUND

¶ 3    The following facts are drawn from the pleadings and the evidence produced during discovery and presented to the court at the summary judgment stage. Plaintiff Stephen Jackson is a licensed Illinois real estate broker. The Employees' Retirement System of the State of Hawaii (HERS) is a Hawaii state agency responsible for providing retirement benefits for Hawaiian state and county government employees. Defendant Clarion Partners, LLC (CP), is an Illinois limited liability company in the business of providing investment advice to institutional investors, such as pension funds. Defendant ING Clarion Realty Services, LLC (CRS), is an Illinois limited liability company in the business of providing property management services. Before 2011, CP and CRS were owned by ING Bank. In 2011, CP purchased its assets from ING Bank. CRS remained part of ING Bank.[1]

¶ 4    In October 1997, HERS entered into a contract with CP. The contract provided that CP would "acquire, operate and dispose of interests in real estate" for HERS in a manner consistent with the contract itself, the State of Hawaii's real estate guidelines, and an "Annual Tactical Plan." The contract stated that CP would, among other things, (1) negotiate the terms and conditions of the sale of properties, (2) execute closings, (3) oversee properties CP owned for HERS, and (4) collect rents. The contract stipulated that any property acquired by CP for HERS's benefit be held in "limited liability entities" as permitted by Hawaii law. In accordance with this provision, CP and HERS formed a limited partnership named CP/HERS LP, with CP as the general partner and HERS as the limited partner. Additional CP/HERS LPs were formed to manage each individual property CP acquired for HERS pursuant to the contract.

¶ 5    The contract also included a procurement form titled "General Conditions," which the State of Hawaii used in its contracts. Three of its provisions are pertinent to this case. Paragraph 35 required CP to "comply with all federal, state, and county laws, ordinances, codes, rules, and regulations" that may "in any way affect" CP's performance of its contractual obligations. Paragraph 2(d) stated that CP was "responsible for obtaining all licenses, permits, and certificates that may be required in order to perform this Agreement." Paragraph 3(b) required CP to "ensure that [its] employees or agents are experienced and fully qualified *** and that all applicable licensing and operating requirements imposed or required under federal, state, or county law, and all applicable accreditation and other standards of quality generally accepted in the field of the activities of such employees and agents are complied with and satisfied."

---

[1]While this case was pending, CRS became defunct and a default judgment was entered against it.

¶ 6        After the contract became effective, HERS allocated $100 million to CP, which CP in turn used to acquire 10 properties located in Massachusetts, Texas, Florida, Virginia, Washington, D.C., and Northbrook, Illinois. The Illinois properties were acquired on January 7 and July 1, 1998. They were owned by CP/HERS Northbrook, a CP/HERS LP established specifically for their administration and management.

¶ 7        In 2006, CP began the process of selling HERS's real estate portfolio. In connection with that task, CP—in its capacity as general partner of CP/HERS Northbrook LP—hired HiGroup, a real estate brokerage firm, to broker the sale of the HERS property located in Northbrook. At the time, Jackson was employed by HiGroup. In April 2007, before the sale of the Northbrook properties closed, a commission dispute arose between Jackson, HiGroup, and CP. That dispute culminated with Jackson filing a lawsuit against HiGroup and CP in the circuit court of Cook County. See Jackson v. HiGroup, 07 L 8058 (Cir. Ct. Cook Co.) (*Jackson I*).

¶ 8        In *Jackson I*, Jackson brought, among numerous other claims, a claim for breach of contract, promissory estoppel, and a violation of the Whistleblower Act (740 ILCS 174/1 *et seq.* (West 2014)), against HiGroup and its executives, and a *qui tam* claim against CP and CRS on behalf of the State of Illinois. In the *qui tam* claim, Jackson alleged that CP, which was not a licensed Illinois real estate broker, engaged in conduct, which constituted the performance of "licensed activities" under the Real Estate License Act of 2000 (Act). 225 ILCS 454/1-1 *et seq.* (West 2006). The circuit court struck Jackson's *qui tam* claim without prejudice in December 2008.

¶ 9        In an amended complaint, Jackson again brought a *qui tam* claim on behalf of the State of Illinois alleging that CP had violated the Act. Among other things, Jackson alleged that (1) by virtue of its "activities as property manager," CP was required under the Act to obtain a real estate broker's license and (2) CP had also violated real estate licensing laws that were similar to the Act in Hawaii, Texas, and Massachusetts, insofar "as they related to the various ING[2] entities and employees involved in the Northbrook Property."

¶ 10       In May 2009, the circuit court dismissed the *qui tam* claim in Jackson's amended complaint, without prejudice, pursuant to section 2-615 of the Code of Civil Procedure (Code). 735 ILCS 5/2-615 (West 2008). Jackson did not replead his *qui tam* claim. In January 2012, *Jackson I* proceeded to a jury trial on Jackson's breach of contract, promissory estoppel, and whistleblower act claims against HiGroup and its executives. The jury ultimately returned a $183,588 verdict in Jackson's favor on his promissory estoppel claim against HiGroup.[3]

¶ 11       On October 18, 2012, Jackson filed this lawsuit against CP and CRS under the Hawaii False Claims Act (Haw. Rev. Stat. § 661-21 *et seq.* (2014)) on behalf of HERS and the State of Hawaii (hereinafter *Jackson II*). As in *Jackson I*, Jackson once again brought a *qui tam* claim against CP and CRS—though this time, under the Hawaii False Claims Act (rather than under Illinois law) and on behalf of the State of Hawaii and HERS (rather than the State of Illinois). And, just as in *Jackson I*, the central premise of the *qui tam* claim in *Jackson II* was Jackson's allegation that CP and CRS, "[d]espite not being licensed as required under the [the Act] and under the laws of other states, *** engaged in licensed activities and received remuneration

---

[2]At this point in time, CP had yet to divest itself from ING Bank, and thus, the complaint in *Jackson I* referred to CP and CRS as the "ING entities."

[3]These facts are taken from a January 23, 2012, order entering judgment on the jury's verdict, of which we may take judicial notice. *People v. Grau*, 263 Ill. App. 3d 874, 876 (1994).

from [HERS] for those activities" for services CP performed with respect to the Northbrook properties pursuant to its contract with HERS.

¶ 12 On August 26, 2013, CP filed a motion to dismiss. CP explicitly argued that Jackson failed to state a claim under the Hawaii False Claims Act. CP did not raise an explicit *res judicata* argument, but it did note that Jackson's amended complaint in *Jackson II* was "the third time Jackson has tried to sue CP as a result of his dispute with his prior employer [*i.e.*, HiGroup]." The court denied the motion and the case proceeded to discovery.

¶ 13 In March 2015, CP filed another motion to dismiss. CP noted that Jackson's *qui tam* claim based on the assertion that CP was violating the Act was identical to the *qui tam* claim that the court dismissed in *Jackson I*. CP did not explicitly raise a *res judicata* defense, but it did assert that it "will argue on summary judgment, if necessary, that [*Jackson I*] is *res judicata* with regard to this case." The court denied the motion.

¶ 14 On August 7, 2015, CP filed a motion for summary judgment. In that motion, CP argued, among other things, that Jackson's *qui tam* claim was barred by the doctrine of *res judicata*. On January 6, 2016, the circuit court issued a detailed memorandum opinion and order resolving CP's motion for summary judgment. The court found that the case satisfied the basic elements of *res judicata*. Despite that, the court rejected CP's *res judicata* argument on the basis that CP waited too long to raise it. In reaching that conclusion, the circuit court relied exclusively on this court's opinion in *Piagentini v. Ford Motor Co.*, 387 Ill. App. 3d 887 (2009). Nonetheless, the court granted summary judgment to CP, on the bases that (1) CP did not violate the Act and (2) the majority of Jackson's claims were untimely under the statutes of limitations and repose.

¶ 15 On February 4, 2016, CP filed a motion for costs. In that motion, CP argued that, under section 5-109 of the Code (735 ILCS 5/5-109 (West 2014)), it was entitled to recover $31,253.25 in costs, including costs for obtaining copies of depositions, videographers who taped evidence depositions, court reporters who transcribed hearings, filing fees, photocopying costs, and travel expenses and witness fees for depositions. The claim for those particular costs was, in turn, predicated on Hawaii law, namely section 27(c) of the Hawaii False Claims Act (Haw. Rev. Stat. § 661-27(c) (2014)), which permits prevailing plaintiffs to recover costs, and section 607-9 of Hawaii's civil procedure statute (Haw. Rev. Stat. § 607-9 (2014)), which defines "costs" far more broadly than its Illinois counterpart because it allows imposition of costs for, among other things, "intrastate travel expenses for witnesses and counsel." The court granted CP's motion for costs but refused to apply Hawaii law. Instead, the court, relying on section 5-108 of the Code (735 ILCS 5/5-108 (West 2014)), awarded CP $936 in costs, which represented its filing expenses in the circuit court. This appeal and cross-appeal followed.

¶ 16                                                    ANALYSIS

¶ 17 We begin with Jackson's appeal of the circuit court's order granting CP's motion for summary judgment. Summary judgment is appropriate "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2014). We review a circuit court order granting summary judgment *de novo*. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992).

¶ 18 As noted, the circuit court granted summary judgment to CP on the bases that (1) CP did not violate the Act and (2) Jackson's claims were untimely under the statutes of limitation and

- 4 -

repose. However, this court may sustain a circuit court's judgment for any basis supported by the record, "regardless of whether the circuit court relied on the grounds and regardless of whether the circuit court's reasoning was correct." (Internal quotation marks omitted.) *Rodriguez v. Sheriff's Merit Comm'n*, 218 Ill. 2d 342, 357 (2006). Based on our review of the record, we find that Jackson's claims in the present case are barred by *res judicata*.

¶ 19 "The doctrine of *res judicata* provides that a final judgment on the merits rendered by a court of competent jurisdiction bars any subsequent actions between the same parties or their privies on the same cause of action." *Rein v. David A. Noyes & Co.*, 172 Ill. 2d 325, 334 (1996). The doctrine reaches "not only to what was actually decided in the original action, but also to matters which could have been decided in that suit." *Id.* at 334-35. To apply, three elements must be present: (1) "a final judgment on the merits rendered by a court of competent jurisdiction," (2) "an identity of cause of action," and (3) "an identity of parties or their privies." *Id.* at 335. The facts of this case easily satisfy these elements.

¶ 20 First, the circuit court's order in *Jackson I* dismissing Jackson's *qui tam* claim was a "final judgment on the merits." See Ill. S. Ct. R. 273 ("[A]n involuntary dismissal of an action *** operates as an adjudication upon the merits."). Second, there is an identity of cause of action between the *qui tam* claims Jackson pled in *Jackson I* and *Jackson II*. Even though *Jackson I* arose under Illinois law and *Jackson II* purported to state a claim under the Hawaii False Claims Act, both cases were predicated on precisely the same theory. In each case, Jackson alleged that CP violated the Act by virtue of the work it performed for HERS with respect to the Northbrook property. More precisely, the gravamen of each case was that CP did not have a broker's license and the theory that the work CP performed constituted "licensed activities" under the Act. The doctrine of *res judicata* bars Jackson from proceeding with the successive case. See *River Park, Inc. v. City of Highland Park*, 184 Ill. 2d 290, 311 (1998) ("[S]eparate claims will be considered the same cause of action for purposes of *res judicata* if they arise from a single group of operative facts, regardless of whether they assert different theories of relief."). Finally, Jackson and CP were both parties in *Jackson I*, notwithstanding the fact that Jackson sued on behalf of different states in *Jackson I* and *Jackson II*. See 740 ILCS 175/4(b)(1) (West 2014) (a claim under the Illinois False Claims Act may be brought by a private person "for the person and for the State"); Haw. Rev. Stat. § 661-25(a) (2014) (a claim under the Hawaii False Claims Act may be brought by a private person "for the person and for the State").

¶ 21 Jackson offers a variety of arguments against applying *res judicata* to this case, but they are all unconvincing. Closest to the mark is his argument, predicated on *Piagentini*, 387 Ill. App. 3d at 898, that CP acquiesced in Jackson's improper claim splitting by waiting too long to raise its *res judicata* claim. But even that contention is not persuasive. First, we are not bound by *Piagentini* because the Illinois Appellate Court does not adhere to horizontal *stare decisis*. *Gillen v. State Farm Mutual Automobile Insurance Co.*, 215 Ill. 2d 381, 392 n.2 (2005); *Langenstein v. Kassimali*, 2012 IL App (5th) 120343, ¶ 8.

¶ 22 Second, Jackson's reliance on *Piagentini* is unpersuasive. In *Piagentini*, the court rejected the defendant's *res judicata* argument on the basis that there had not been a prior final judgment on the merits. *Piagentini*, 387 Ill. App. 3d at 895. After resolving the case on that basis, the court proceeded to analyze, *arguendo*, whether the defendant had acquiesced in the plaintiff's claim splitting. The court found that defendant did in fact acquiesce, because it waited 3½ years before raising its *res judicata* defense, during which time the defendant

responded to motions and participated in discovery. In other words, the court's acquiescence analysis was pure *dicta*—a point CP noted in its appellate brief and to which Jackson did not to respond in his reply brief. Statements made in *dicta* are not always binding. See *People v. Williams*, 204 Ill. 2d 191, 206 (2003) (discussing the difference between "*obiter dicta*," which is not binding, and "judicial *dicta*," which is). As a result, Jackson's reliance on *Piagentini* is unavailing.

¶ 23 In addition, the notion that CP acquiesced in Jackson's claim splitting is directly belied by its statements in its motions to dismiss that (1) *Jackson II* was duplicative of *Jackson I* and (2) it would file a summary judgment motion raising arguing *res judicata* if need be.

¶ 24 Finally, we note that *res judicata* is an equitable doctrine. *Murneigh v. Gainer*, 177 Ill. 2d 287, 299 (1997). This lawsuit is nothing more than a continuation of Jackson's feud with HiGroup—a feud which he already won by securing a money judgment in *Jackson I*. In light of the facts that (1) *Jackson I* and *Jackson II* are both based on the theory that CP violated the Act by engaging in "licensed activities" on behalf of HERS, (2) this lawsuit is merely a rehash of *Jackson I*, which was clearly at its heart a dispute between Jackson and his employer to which CP was only tangentially related, and (3) Jackson actually obtained judgment in his favor in *Jackson I*, we can discern no persuasive justification for why additional judicial resources should have been devoted to again resolving this claim on its substantive merits.

¶ 25 Based on the foregoing, Jackson's claim against CP in *Jackson II* is barred by *res judicata*. On that basis, we find that the circuit court properly entered summary judgment in favor of CP. Because we have resolved Jackson's appeal on *res judicata* grounds, we need not consider the correctness of the circuit court's finding that CP did not violate the Act or that the majority of Jackson's claims were untimely.

¶ 26 Jackson also disputes the propriety of the circuit court's order awarding CP $936 in costs as the prevailing party under section 5-109 of the Code. 735 ILCS 5/5-109 (West 2014). The decision to award a prevailing defendant costs is mandatory. *Id.* Although the substance of a court's award of costs is generally reviewable for abuse of discretion, Jackson has not cited any authority explaining why the court's decision to award $936 in costs was erroneous. The arguments he has presented, among them an accusation that CP's counsel tainted various depositions by eliciting testimony that was "known to be false or otherwise coached or contaminated," are impenetrably incoherent and largely underdeveloped. The combined effect of these failures is waiver. Ill. S. Ct. R. 341(h)(7) (eff. Jan. 1, 2016).

¶ 27 We next consider the argument raised by CP in its cross-appeal that the circuit court erred by refusing to award CP those costs to which it would have been entitled to under the law of Hawaii. This issue presents a question of statutory construction which we review *de novo*. *Relf v. Shatayeva*, 2013 IL 114925, ¶ 21.

¶ 28 Section 5-109 of the Code provides:

> "If any person sues in any court of this state, in any action, wherein the plaintiff may have costs in case judgment is entered in favor of the plaintiff and the action is voluntarily dismissed by the plaintiff or is dismissed for want of prosecution or judgment is entered against the plaintiff, then judgment shall be entered in favor of defendant to recover defendant's costs against the plaintiff ***, to be taxed, and the costs shall be recovered of the plaintiff, *by like process* as the plaintiff may have had against the defendant, in case judgment had been entered for such plaintiff." (Emphasis added.) 735 ILCS 5/5-109 (West 2014).

¶ 29    Our analysis turns on the meaning of the italicized phrase, "by like process." In CP's view, that phrase encompasses the financial elements comprising an award of costs. CP argues that if Jackson had prevailed on his Hawaii False Claims Act claim, he would have been entitled to costs, as that term is defined under Hawaii law. Thus, CP concludes that, because section 5-109 entitles it as a prevailing defendant to recover its costs "by like process" as Jackson would have if he had won, it is entitled to the full array of costs available under Hawaii law. We disagree.

¶ 30    First, it is noteworthy that, although costs are mandatory under section 5-109, defendants do not receive their costs by simple operation of law. Rather, defendants must avail themselves of some manner of "process" to recover their costs. *Id.* That brings us to our second point: section 5-109 is immediately preceded by section 5-108, which provides that if a plaintiff sues and recovers damages, "then judgment shall be entered in favor of the plaintiff to recover costs against the defendant, to be taxed, and the same shall be recovered and enforced as other judgments for the payment of money." 735 ILCS 5/5-108 (West 2014).

¶ 31    When read in light of section 5-108, it is clear that the phrase "by like process" refers merely to the legal procedure, *i.e.*, filing a motion for costs in the circuit court, that a prevailing defendant must utilize in order to obtain an award of costs. Accordingly, CP's effort to use section 5-109 to import Hawaii's statutory definition of the term "costs" into the Illinois Code of Civil Procedure fails. Simply put, CP was sued in an Illinois state court and Illinois's procedure rules govern how its costs are awarded.

¶ 32                                    CONCLUSION

¶ 33    We affirm the circuit court's orders awarding summary judgment to CP and rejecting CP's request for costs as defined under Hawaii law.

¶ 34    Affirmed.