2025 IL App (1st) 241121-U

Fourth Division
Filed September 18, 2025

No. 1-24-1121

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | |
|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | Appeal from the |
|     Plaintiff-Appellants, | Circuit Court of Cook County |
|     v. | No. 22 DV 3088001 |
| DANIJEL NIKOLIC | The Honorable Joel Greenblatt, |
|     Defendant-Appellant. | Judge, presiding. |

JUSTICE OCASIO delivered the judgment of the court.
Presiding Justice Navarro and Justice Lyle concurred in the judgment.

**ORDER**

¶ 1     *Held*: The defendant's conviction was affirmed where (1) the trier of fact rationally accepted the complaining witnesses' testimony, (2) the defendant forfeited, through inadequate briefing, his argument that the trial court erred in its consideration of the complaining witness's prior inconsistent statements, and (3) the trial court did not abuse its discretion when it excluded evidence that the complaining witness was a participant in a "sham marriage."

¶ 2     Following a bench trial on December 20, 2023, the trial court found the defendant, Danijel Nikolic, guilty of domestic battery (720 ILCS 5/12-3.2(a)(1))(West 2022)) stemming from an incident with Jefimija Dokic. Nikolic was sentenced to a 12-month term of conditional discharge, domestic violence counseling, and 40 hours of community service. On appeal, Nikolic argues that (1) Dokic's testimony about the charged incident was not sufficiently credible to sustain his conviction, (2) the trial court erred in connection with its consideration of a civil counterclaim

Dokic filed against Nikolic, and (3) the trial court violated his sixth amendment rights by restricting his ability to cross-examine Dokic about her participation in a "sham marriage" involving a third party.

¶ 3                                    I.  BACKGROUND

¶ 4        On August 24, 2022, Nikolic was charged by criminal complaint with domestic battery. The complaint alleged that Nikolic pushed Dokic causing her to strike her head against the door frame which caused a cut above Dokic's right eye.

¶ 5        At trial, Dokic testified that she became engaged to Nikolic in November of 2021 but was no longer in a relationship with him. She said that on August 24, 2022, she was living with Nikolic at 173 Regency Drive in Barlett, Illinois. At approximately 9:00 p.m. that evening, Nikolic was on the main floor living room watching television with Dokic. They were talking about their relationship; Dokic was planning on ending the relationship. She stated that she was going to move out by the end of the upcoming week, Nikolic agreed. Nikolic asked where she would be living at, when Dokic did not respond to the question, he proceeded to accuse Dokic of cheating on him. Dokic responded by accusing Nikolic of cheating on her and flaunted receipts of hotel bills that he had visited during work hours. Nikolic became upset and stated he had been faithful to the relationship. Nikolic further defended himself reporting he had access to the GPS of the truck and that his driver was probably the one that used the hotel. Dokic exited the room and headed upstairs towards a bedroom. When she was headed towards the bedroom, Nikolic ordered her to leave the house immediately. Nikolic then followed Dokic into the bedroom. Dokic was retrieving some of her items but refused to leave. Nikolic became agitated and angry. Dokic headed towards their bedroom and attempted to retrieve items from their closet. Nikolic blocked her pathway and pushed her. Dokic repeatedly told Nikolic, "Do not push me." Undeterred, Nikolic pushed her again; she raised her hands up, in a defensive position, with her palms facing outward. Nikolic then pushed her again causing her to hit her head on the door frame of the bedroom door.

¶ 6      Dokic testified that Nikolic pushed her "pretty hard" and caused her to hit her head. When she touched her head, she realized she was bleeding. Nikolic began screaming at her to get out. Dokic testified that she recorded the incident on her phone, the phone had remained in her pocket. The phone only recorded the audio of the incident in Serbian, the language used during the tirade. During the bout, Dokic's phone fell out of her pocket. Nikolic attempted to grab her phone but Dokic was able to grab it first and called the police. As a result of the confrontation, Dokic's injuries included bruising on her face, knees; swelling to her feet and required three stitches.

¶ 7      During cross-examination, Dokic was confronted with a verified answer and counter claim, filed by her attorney in a civil action against Nikolic. In that pleading Dokic declared that Nikolic had "deliberately and without provocation willfully, intentionally, maliciously and wantonly punched, kicked and struck the plaintiff [Dokic], thereby causing her serious and permanent injuries." To perfect the impeachment, defense counsel asked Dokic if she was ever punched or kicked by Nikolic. Dokic confessed that Nikolic had neither punch nor kick her. Dokic only acknowledged to Nikolic having pushed her into a door. Dokic was also asked about a handwritten agreement that she signed, agreeing to pay back a debt owed to Nikolic and allow him to access an investment account. The prosecution objected to relevance, and the trial court overruled the State's objection. Dokic admitted she had neither paid Nikolic back the loan nor given him access to the account.

¶ 8      Dokic confirmed that Nikolic had asked her to move out on August 24, 2022. According to Dokic, Nikolic proposed marriage and gave her an engagement ring in November 2021. She also stated that her ex-husband was Ventzislav Slavov. The State objected to this line of questioning on relevancy grounds. Nikolic contended that Dokic was being untruthful about the engagement since she was married to Slavov and thus could not marry Nikolic. The trial court upheld the objection. Defense counsel then inquired about what Dokic did with a substantial sum of money lent by the defendant; the State again objected, citing relevancy. A sidebar discussion followed without Dokic's presence. The defense claimed that Dokic's marriage to Slavov was false and that she married him to gain U.S. citizenship, agreeing to pay his federal income taxes. The State argued

that this evidence was inadmissible character evidence, and the trial court concurred, ruling it inadmissible.

¶ 9    On redirect examination, Ms. Dokic clarified that she did not personally author the counter-claim document; it was drafted by her attorney. Furthermore, she specified that her attorney did not review the document with her line by line prior to her signing it. Subsequently, counsel presented her with a signed petition for an order of protection, filed on August 29, 2022. In that petition, Ms. Dokic alleged that Mr. Nikolic pushed her, causing her to strike her head against a door frame.

¶ 10    Officer Samuel Mora Jr. testified that he was called to 173 Regency Drive on August 24, 2022, at around 9:00 p.m., for a domestic battery. He and his two partners, Sergeant Simone and Officer Blaser, responded to that scene. Officer Mora was notified by Dokic that Nikolic was inside the house when they arrived. Officer Mora went into the house and talked to Nikolic. Officer Mora identified Nikolic in court and stated in his testimony that Nikolic admitted to pushing Dokic. Officer Mora indicated that Nikolic claimed to have pushed Dokic with his forearms while crossing his arms over his chest. Officer Mora saw Dokic bleeding from her head.

¶ 11    Officer Mora also testified during cross-examination that Nikolic had informed him that Dokic had pushed him on at least two previous occasions. Officer Mora was unable to recall whether Nikolic informed him whether Dokic had pushed him first during this incident. On re-direct, Officer Mora stated that he did not observe any injuries to Nikolic; and on re-cross, he was unable to remember if he saw clothing on the bedroom floor where the incident occurred.

¶ 12    The State then rested its case, and Nikolic's motion for directed finding was denied.

¶ 13    Nikolic testified that he met Dokic in 2014. They had an off and on relationship, and Dokic moved into his home in March 2022. Nikolic stated that he asked Dokic to move out twice, in the middle of March and in April, and Dokic did not move out. They argued almost every week, but Dokic refused to leave when she was asked to move out.

¶ 14    Nikolic testified that on August 24, 2022, Dokic accused him of having an affair while they watched TV and showed him hotel receipts. He threw the documents in the garbage. Dokic said

she would leave on Sunday and went upstairs to the bedroom. Nikolic followed her, and she began taking belongings out of the closet. According to Nikolic, Dokic pushed him twice before losing balance on the third attempt, tripping over clothes, and hitting her head on the door frame. He denied causing her fall. After noticing she was bleeding, he handed her a towel and her phone. Dokic then called the police. Nikolic claimed the phone recording did not capture the entire incident.

¶ 15    On cross-examination, Nikolic admitted that he gave Dokic a ring but clarified that it was not an engagement ring. Nikolic stated he was about two feet away from Dokic when he was pushed near into the closet. Nikolic also admitted that it was his voice in the audio recording.

¶ 16    The defense rested, then the State called Dokic to testify in rebuttal. She said her fall was not caused by tripping over clothes. Dokic was shown a photo; she pointed out her blood droplets on the hallway floor outside the bedroom where she landed. The trial court asked her about the photo, and she explained that she hit her head on the left side of the bedroom door frame. During cross-examination, she was shown more photos of her blood throughout the house after leaving the bedroom.

¶ 17    The State then rested their rebuttal case; the trial court listened to the audio recording again with the assistance of the Serbian interpreter.

¶ 18    The trial court adjudicated Nikolic guilty of domestic battery. Initially, it established the existence of a family or household relationship between Nikolic and Dokic. The court deemed issues such as potential infidelity or a debt document signed by Dokic irrelevant to the case. It confined its consideration solely to the events of August 24. The defense introduced a prior pleading alleging that Nikolic had punched and kicked Dokic; however, the court concentrated on Dokic's sworn testimony during the trial. Dokic consistently testified that there was no punching or kicking involved, but rather three pushes, with the final push causing her to fall and strike her head.

¶ 19    The trial court found Dokic credible. In the recording, Nikolic never said "stop, don't push me," but Dokic can be heard repeatedly saying "stop pushing me," followed by a scream as she

falls and hits her head. The trial court sentenced Nikolic to one year of conditional discharge, required domestic violence counseling, and issued Dokic a two-year Order of Protection.

¶ 20     Nikolic now appeals.

¶ 21                                    II.  ANALYSIS

¶ 22     On appeal, Nikolic argues that the trial court erred by (1) finding him guilty based on Dokic's testimony, which he contends was incredible, (2) finding that Dokic's answer and counterclaim in the civil matter was not impeaching even though it contradicted her trial testimony, and (3) barring him from cross-examining Dokic about whether her marriage to Slavov was a sham.

¶ 23                          A.  Sufficiency of the Evidence

¶ 24     Nikolic first contends that Dokic's testimony, which he characterizes as unworthy of belief, was insufficient for the trial court to find him guilty of domestic battery beyond a reasonable doubt. "When a defendant challenges the sufficiency of the evidence, a reviewing court must determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *People v. Jackson*, 2020 IL 124112, ¶ 64. Under this standard, it is not a function of the reviewing court to retry the defendant. *Id*. Therefore, when it comes to issues concerning the credibility of witnesses or the weight of the evidence, a reviewing court will not replace the factfinder's judgment with its own. *Id*. The testimony of a single witness, if positive and credible, is sufficient to sustain a conviction. *People v. Smith*, 185 Ill. 2d 532, 545 (1999). "A conviction will not be set aside on appeal unless the evidence is so unreasonable, improbable, or unsatisfactory that there remains a reasonable doubt of the defendant's guilt." *People v. Wright*, 2017 IL 119561, ¶ 70.

¶ 25     To establish domestic battery, the State must show that the defendant knowingly without legal justification by any means causes bodily harm to any family or household member. 720 ILCS 5/12-3.2(a)(1) (West 2018).

¶ 26     In arguing that he was not proven beyond a reasonable doubt of causing bodily harm, Nikolic contends that the trial court erred in concluding that the audio recording supported Dokic's

testimony rather than his own. The Court found that, according to the interpreter's translation of the recording, Nikolic is not heard stating "stop pushing me." In contrast, Dokic is heard repeating that request multiple times, after which a scream is audible, followed by what appears to be her fall.

¶ 27    Nikolic contends that Dokic admitted on direct examination that, in the recording, Nikolic made a statement about her pushing him:

> "Q. Now, Jefimija, you heard the interpreter interpret the defendant's statement regarding you pushing him around; is that correct?
>
> A. Yeah. On the end he said, like, this is how it looks when you're kind of pushing with me, whatever that would mean.
>
> Q. Did you physically push him?
>
> A. No, I didn't As I explained, I just put my hands to protect myself; but I didn't push him, like, push him. And, as well, he was the first one who said that he is going to—he says police were going to come over here. Then I said like, okay, police can come."

Nikolic argues that the audio recording corroborates his testimony that Dokic was pushing him and while doing so, caused herself to fall against the door frame striking her head. Nikolic further argues that his statements made to Officer Mora where Nikolic stated Dokic pushed him twice before the incident corroborated with his testimony that he got pushed.

¶ 28    We conclude that this comes down to how Dokic's answers to the State's questions were interpreted. Dokic explained that she raised her hands to "protect herself" and denied pushing Nikolic in that same line of questioning. Additionally, according to Dokic, the recording said, "[T]his is how it looks when you're kind of pushing with me," which could be interpreted in various ways. The phrase "you're kind of pushing with me" may imply that Dokic was testing his boundaries or attempting to provoke him. It may also convey that Nikolic is pointing out the consequences or reactions that occur when he feels pressured or antagonized. As the trier of fact,

it was the trial court's role to decide whether to infer from Nikolic's remark that Dokic was physically pushing him with her hands at the time the recording was made. *Wright*, 2017 IL 119561, ¶ 70. When viewing the evidence in the light most favorable to the prosecution, we are unable to say that a rational trier of fact could not find beyond a reasonable doubt that Nikolic caused Dokic's injuries. The evidence was, accordingly, sufficient to sustain his conviction.

¶ 29                     B.  Consideration of Prior Inconsistent Statement

¶ 30        Next, in argument II of his brief, Nikolic asserts that the trial court somehow erred in its consideration of a verified counterclaim Dokic filed in a related civil matter that, contrary to her trial testimony that he had merely pushed her, alleged that he had "punched, kicked and struck" her during the charged incident. Beyond that, we are unable to discern what, precisely, the nature of the alleged error was. The topical header to argument II asserts that the trial court erred by "ruling that [Dokic's counterclaim] was not impeaching." That framing suggests that Nikolic is challenging an evidentiary ruling of some kind. But that interpretation is immediately undermined by the first sentence of the argument proper, which contends that the court erred by "not giving any weight" to Dokic's counterclaim. And even that is ambiguous. Is he challenging the sufficiency of the evidence again? The State thinks so, but if that were the case, one would expect argument II to clearly say so, especially given that argument I explicitly contended that the evidence was legally insufficient to sustain Nikolic's conviction. Further, later in argument II, Nikolic complains that the court "did not even consider the impeachment" and argues that the court's failure "severely undermined [its] ruling that there was sufficient evidence to convict," suggesting that the problem is a failure to take relevant evidence into account, not that his conviction was based on legally inadequate evidence.

¶ 31        Compounding these problems is the complete failure of argument II to cite relevant law. The rules require parties to support their arguments with citations to authority. Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020). Argument II, however, cites only two authorities, and neither of them apply in

criminal proceedings.[1] It does not cite any authority that helps us understand what, exactly, Nikolic is claiming that the trial court did wrong.

¶ 32     "A reviewing court is entitled to have briefs submitted that present an organized and cohesive legal argument in accordance with the Supreme Court Rules." *Twardowski v. Holiday Hospitality Franchising, Inc.*, 321 Ill. App. 3d 509, 511 (2001). Failing to present a coherent argument results in forfeiture. See *Employees' Retirement System of the State of Hawaii v. Clarion Partners, LLC*, 2017 IL App (1st) 161480, ¶ 26 (finding forfeiture where appellant's arguments were "impenetrably incoherent and largely underdeveloped"). So does failing to cite relevant supporting authority. *Gakuba v. Kurtz*, 2015 IL App (2d) 140252, ¶ 19. Argument II fails on both counts and, so, is forfeited.

¶ 33                     C.  Limitation on Cross-Examination

¶ 34     Nikolic next contends that the trial court violated his sixth amendment right to confront the witnesses against him by precluding him from impeaching Dokic with the fact that she owed Nikolic $21,000 and by showing that she borrowed that sum from Nikolic to cover a tax payment related to a "sham marriage" she had entered into to gain legal immigration status. He argues that this evidence was relevant to Dokic's credibility because the unpaid debt gave her a reason to falsely accuse Nikolic of engaging in acts of domestic violence and because the "sham marriage" explained why she had borrowed the money and showed that she was willing to lie to gain a legal benefit.

¶ 35     The confrontation clause under the sixth amendment to the United States Constitution guarantees the right of an accused in a criminal proceeding to be "confronted with the witnesses

---

[1]     The authorities cited are Illinois Supreme Court Rule 137 (eff. Jan. 1, 2018) and *North Shore Sign Co. v. Signature Design Group, Inc.*, 237 Ill. App. 3d 782, 789 (1992). Rule 137 requires, among other things, that pleadings, motions, and other documents bear the signature of at least one attorney of record (or, if *pro se*, the filing party), which essentially functions as a representation that the filing is not frivolous. The portion of *North Shore Sign Co.* that Nikolic relies on simply restates that requirement. See *North Shore Sign Co*, 237 Ill. App. 3d at 789.

against him." (U.S. Const., amend. VI). This provision was made applicable to the states through the fourteenth amendment in *Pointer v. Texas*, 380 U.S. 400, 403 (1965).

> "[A] criminal defendant states a violation of the Confrontation Clause by showing that he was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness, and thereby 'to expose to the jury the facts from which ... could appropriately draw inferences relating to the reliability of the witness.' " *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986) (quoting *Davis v. Alaska*, 415 U.S. 308, 318 (1974)).

"A trial court is afforded broad discretion to limit the scope of cross-examination, and its restriction of cross-examination will not be reversed absent an abuse of that discretion." *People v. Palmer*, 2017 IL App (1st) 151253, ¶ 25.

¶ 36    Initially, the record refutes Nikolic's claim that the trial court barred evidence that Dokic owed him money. Dokic testified on cross-examination that, prior to the charged incident, she had acknowledged in writing that she owed Nikolic $21,332.74, and that written acknowledgement was introduced as an exhibit. She also testified that, to date, she had not paid Nikolic back. What the trial court barred was testimony that she had borrowed the money because she needed it to pay her husband's income taxes, which was part of the arrangement she had made with him when they entered into their "sham marriage."

¶ 37    That ruling, moreover, was not an abuse of discretion. A basic condition of admissibility is relevance. Ill. R. Evid. 402 (eff. Jan. 1, 2011). "Relevant evidence" is defined as evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Ill. R. Evid. 401 (eff. Jan. 1, 2011). When the court asked why the reason Dokic had borrowed the money was relevant, defense counsel was unable to articulate a theory of relevance that tied the alleged "sham marriage" to the issues being tried. Counsel argued only that the fact that Dokic was part of a "sham marriage" went "directly to her credibility." It is certainly true that a witness's character for truthfulness or

untruthful is relevant to her credibility. See Ill. R. Evid. 608 (eff. Jan. 6, 2015). But evidence concerning that trait of character must be presented "in the form of opinion or reputation." *Id.* A witness's credibility cannot be impeached with evidence of specific instances of dishonest conduct. *Powell v. Dean Foods Co.*, 2013 IL App (1st) 082513-B, ¶ 105. The trial court properly allowed the defense to impeach Dokic with the fact that she owed Nikolic a substantial sum of money, and, in the absence a connection between the "sham marriage" and the charged incident, it was not an abuse of discretion to exclude evidence about why Dokic had borrowed the money in the first place.

¶ 38                                     III.  CONCLUSION

¶ 39          For the reasons stated, we affirm the judgment of the trial court.

¶ 40          Affirmed.